Dear Mr. Buford:
This opinion is in response to your questions asking:
 QUESTION NO. 1: Can the county commissioners order the closing of the courthouse doors?
 QUESTION NO. 2: Can the county commissioners cease paying elected county officials?
 QUESTION NO. 1
Section 49.310, RSMo 1986, requires the county commission (formerly called the county court) to erect and maintain a courthouse at the established county seat, stating in pertinent part:
 The county commission in each county in this state shall erect and maintain at the established seat of justice a good and sufficient courthouse, . . .
The county commission's powers are limited and defined by statute and whenever the county steps outside of and beyond this authority its acts are void. Browning-Ferris Industries ofKansas City, Inc. v. Dance, 671 S.W.2d 801, 808 (Mo.App. 1984). Accordingly, the county commission must keep the courthouse doors open. A "county courthouse" is a building wherein courts are held and records kept and county officers maintain their offices and perform their function at the county seat. Odell v. Pile, 260 S.W.2d 521, 524 (Mo. 1953). The public must have reasonable access to the county's official records, as well as the circuit court's official records, and reasonable access to the offices of the county officials for conducting county and court business. However, we find no law prohibiting a commission from reducing the number of hours each day the courthouse is held open to the public for conducting county and court business.
QUESTION NO. 2
Section 50.330, RSMo 1986, requires payment of county officials' salaries: "Any salary provided for a county officer, deputies and assistants, shall be paid in monthly installments on the first day of each month, by warrants drawn on the county treasury." (Emphasis added). The salary of the elected county officials is determined by statute enacted by the legislature, which amounts to a mandate to the county commission to budget such amounts. Failure to do so does not prevent the creation of the obligation. The legislature has created the obligation by statute, and such obligations imposed by the legislature have priority over other such items as to which the county commission has discretion to determine whether or not such obligation should be incurred. To permit public officials elected or appointed to receive, by agreement or otherwise, a less compensation for their services than fixed by law, would be contrary to "public policy" of the state. Reed v. JacksonCounty, 142 S.W.2d 862, 865 (Mo. 1940).
The Missouri Supreme Court noted in Gill v. BuchananCounty, 142 S.W.2d 665 (Mo. 1940) that:
 Failure to budget funds for the full amount of salaries due officers of the county, under the applicable law, which the county court must obey cannot bar the right to be paid the balance.
Id., 142 S.W.2d at 668.
In view of Section 50.330, RSMo 1986, and the above-cited court decisions, it is clear that to permit public officers, elected or appointed, to receive, by agreement or otherwise, a less compensation for their services than fixed by law, would be contrary to the public policy of the state.
Conclusion
It is the opinion of this office that: (1) a decision by the county commission to close the courthouse would be beyond its authority and thus void; however, the commission is not prohibited from reducing the number of hours each day the courthouse is open to the public, and (2) the county commission's failure to pay elected officials does not alleviate or affect the county's obligation to pay them.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General